UNITED STATES, Appellee,

v.

Specialist Laymon L. WILLIAMS, 491–64–6823, United States Army, Appellant,

UNITED STATES, Appellee,

v.

Sergeant Andrew T. KOH, 535–84–7665, United States Army, Appellant.

ACMR 8700524, ACMR 8702646.

U.S. Army Court of Military Review.

30 Nov. 1988.

For Appellant (Koh): Colonel John T. Edwards, JAGC, Lieutenant Colonel Russell S. Estey, JAGC, Lieutenant Colonel Joel D. Miller, JAGC, Captain Donald G. Curry, Jr., JAGC, Captain Patricia D. White, JAGC (on brief).

For Appellee: Colonel Norman G. Cooper, JAGC, Major Daniel J. Dell'Orto, JAGC, Major Gary L. Hausken, JAGC, Captain Anne E. Ehrsam, JAGC (on brief).

For Appellant (Williams): Lieutenant Colonel Joel D. Miller, JAGC, Major Stewart C. Hudson, JAGC, Captain Brian D. Bailey, JAGC, Captain Mary C. Cantrell, JAGC, Captain Patricia D. White, JAGC (on brief).

For Appellee: Colonel Norman G. Cooper, JAGC, Lieutenant Colonel Gary F. Roberson, JAGC, Major Gary L. Hausken, JAGC, Captain Anne E. Ehrsam, JAGC (on brief).

Before the Court sitting En Banc.

## OPINION OF THE COURT

KANE, Judge:

The United States Court of Military Appeals has remanded many cases to this court for consideration *en banc* of issues "concerning the interpretation, application, and constitutionality" of United States Forces Korea Regulation 27–5, 25 October 1983 [hereinafter USFK Reg. 27–5].[1] *See, e.g., United States v. Simonetta,* 26 M.J. 169 (C.M.A. 1988) (summary disposition). This court has previously considered the lawfulness and constitutionality of the regulatory provision at issue and held that "[t]he control of black market activities [is] an appropriate subject of governmental concern and the regulation [is] a valid exercise of that legitimate interest." *United States v. Lindsay,* 11 M.J. 550 (A.C.M.R.), *petition denied,* 11 M.J. 361 (C.M.A.1981). *See also United States v. Battle,* 20 M.J. 827 (A.C.M.R.), *petition denied,* 21 M.J. 317 (C.M.A. 1985). The constitutional implications of the regulation have, however, been persistently raised in subsequent cases. The United States Court of Military Appeals granted petition on and "decided" the issue in *United States v. Lee,* 25 M.J. 457 (C.M.A.1988).

The plurality opinion in *Lee* does not, however, resolve the constitutional issues implicitly raised by such a regulatory disclosure requirement. Judge Sullivan declined to address the issue of constitutionality but disposed of the case on the more narrow ground that, because Lee was a "suspect" at the time he was requested to make the disclosure and was not advised of his rights, the regulation was unconstitutional "as applied" insofar as it operated to "subvert" and "evade" the "constitutional and statutory [Article 31(b), Uniform Code of Military Justice, 10 U.S.C. § 831(b)] rights of a person suspected of a crime." *United States v. Lee,* 25 M.J. at 459–61.

---

1. The cases challenging the constitutionality of the disclosure provision of USFK Reg. 27–5 present several amended versions of the same regulation. While the disclosure requirements are set forth in paragraphs numbered differently from version to version of the regulation, the requirements remain substantially identical. The regulation generally provides:

 b. Personnel will—

 \* \* \* \* \*

(2) Upon request of the unit commander, military law enforcement personnel, or responsible officer, present valid and bona fide information or documentation showing the continued possession or lawful disposition ... of any controlled item ... regardless of where or how acquired, brought into the [Republic of Korea] duty-free or acquired in the [Republic of Korea] without payment of duty or tax. (3) Upon request of the unit commander, military law enforcement personnel, or responsible officer, present valid and bona fide information or documentation showing the continued possession or lawful disposition of any item brought into the [Republic of Korea] free of duty or acquired in the [Republic of Korea] free of duty or tax that is not a controlled item and is a special interest item [as listed by regulation].

In a concurring opinion, Chief Judge Everett opined that USFK Reg. 27-5 "cannot be made the basis" for prosecution as a violation of Article 92 of the Uniform Code of Military Justice, 10 U.S.C. § 892 "[u]nder the fifth amendment and Article 31 of the Uniform Code." *United States v. Lee*, 25 M.J. at 465 (Everett, C.J., concurring). Agreeing that a violation of Lee's Article 31, UCMJ, rights had occurred, Judge Cox posited that the regulation is constitutional because it only requires disclosure of "lawful" dispositions and therefore does not elicit speech or action susceptible of incrimination. *United States v. Lee*, 25 M.J. at 466 (Cox, J., concurring in part and dissenting in part).

Subsequent to this decision, the Court of Military Appeals has by summary disposition set aside the findings in similar cases where pleas of not guilty were entered and has returned those cases to The Judge Advocate General of the Army with authorization to order a rehearing. *See, e.g., United States v. Jeter*, 26 M.J. 217 (C.M.A.1988) (summary disposition). In those cases where guilty pleas were entered, the court has remanded the cases to this court for reconsideration. *See, e.g., United States v. Simonetta, supra.*

In our opinion today, we reconsider the interpretation, application, and constitutionality of United States Forces Korea Regulation 27-5.

### UNITED STATES V. WILLIAMS

Williams was tried by a military judge sitting as a special court-martial. Pursuant to his pleas, he was convicted of violating a lawful regulation, USFK Reg. 27-5, by failing to account for controlled items, violating a lawful regulation, USFK Reg. 27-5, by wrongfully purchasing controlled items in excess of authorized limits, and making a false official statement under oath, violations of Articles 92 and 134, UCMJ, 10 U.S.C. §§ 892 and 934 (1982) [hereinafter UCMJ]. The convening authority approved his sentence to a bad-conduct discharge, confinement for 45 days, and reduction to Private E1. We affirmed the appellant's conviction and sentence.

*United States v. Williams*, ACMR 8700524 (A.C.M.R. 15 Sep. 1987) (unpub.). On 4 March 1988, the United States Court of Military Appeals remanded the case to this court for further review. *United States v. Williams*, 26 M.J. 170 (C.M.A.1988) (summary disposition).

Williams and the government stipulated that, on 6 September 1986, Williams was requested by his company commander to show proper disposition of five video cassette recorders, two sets of speakers, one compact disc player, one television, one stereo music system, one turntable, one tape deck, and one receiver as required by USFK Reg. 27-5; he did not do so. At trial, Williams did not litigate the constitutionality of the regulatory disclosure requirement as applied to him. On appeal, he now contends for the first time that the disclosure requirement of USFK Reg. 27-5 is unconstitutional *per se* in violation of the fifth amendment privilege against self-incrimination, that the disclosure requirement contravenes Article 31, UCMJ, and that the military judge erred in accepting his plea of guilty "in the face of plain violations of appellant's fifth amendment right by law enforcement personnel."

On 26 August 1988, this court ordered *en banc* consideration of the case in order to decide the following issues:

#### I

IS THE DISCLOSURE REQUIREMENT OF USFK REG. 27-5 CONSTITUTIONAL?

#### II

HAS THE APPELLANT ASSERTED A VALID CLAIM OF PRIVILEGE?

#### III

IS THE APPELLANT'S CLAIM OF PRIVILEGE TIMELY?

Our disposition of these issues is set forth below.

## I

### IS THE DISCLOSURE REQUIREMENT OF USFK REG. 27–5 CONSTITUTIONAL?

▓▓▓ Williams argues, as do the appellants in similar cases, that the regulatory disclosure provision of USFK Reg. 27–5 is unconstitutional *per se* or, in the alternative, is unconstitutional as applied. In this, the appellant in *Williams* and its companion cases have misunderstood the substantive application of the privilege. Disclosure requirements are not declared unconstitutional when the privilege is implicated; rather, the conduct being penalized is "constitutionally immune from punishment." *United States v. United States Coin & Currency*, 401 U.S. 715, 724, 91 S.Ct. 1041, 1046, 28 L.Ed.2d 434 (1971). *See, e.g., Leary v. United States*, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969); *Haynes v. United States*, 390 U.S. 85, 88 S.Ct. 722, 19 L.Ed.2d 923 (1968); *Marchetti v. United States*, 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed. 2d 889 (1968); *Grosso v. United States*, 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906 (1968); *Albertson v. Subversive Activities Control Board*, 382 U.S. 70, 86 S.Ct. 194, 15 L.Ed. 2d 165 (1965). *Accord Bannister v. United States*, 446 F.2d 1250, 1264 (3d Cir.1971) ("Neither in *Leary*, nor in *Marchetti, Grosso* or *Haynes* does the Supreme Court say squarely that statutes requiring conduct which for an individual would be self-incriminating were unconstitutional *per se* "). "It is instead the right not to be criminally liable for one's previous failure to obey a statute which required an incriminatory act." *Leary v. United States*, 395 U.S. at 28, 89 S.Ct. at 1544. Stated otherwise, "an individual [from whom disclosures are sought] can rely on the privilege to defend against a ... prosecution for failure to 'supply any information.'" *See Garner v. United States*, 424 U.S. 648, 662, 96 S.Ct. 1178, 1186, 47 L.Ed.2d 370 (1976) (citing *United States v. Murdock*, 290 U.S. 389, 54 S.Ct. 223, 78 L.Ed. 381 (1933)). This result follows from the recognition by the Supreme Court that the fifth amendment is only an *exception* to the essential power of the sovereign to compel disclosures. *See*

*Kastigar v. United States*, 406 U.S. 441, 443–44, 92 S.Ct. 1653, 1655–56, 32 L.Ed.2d 212, *rehearing denied*, 408 U.S. 931, 92 S.Ct. 2478, 33 L.Ed.2d 345 (1972). *See also California v. Byers*, 402 U.S. 424, 427–28, 91 S.Ct. 1535, 1537–38, 29 L.Ed.2d 9 (1971). Thus, the protection offered by the privilege is a matter of substantive law insofar as it forbids criminal penalty for failure or refusal to disclose upon a timely and valid assertion of the privilege. *Garner v. United States*, 424 U.S. at 662–63, 96 S.Ct. at 1186–87. In short, a conviction cannot be based on a valid claim of the constitutional privilege. *Id. See, e.g., Malloy v. Hogan*, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964). *Accord United States v. Lee*, 25 M.J. 457, 465 (C.M.A.1988) (Everett, C.J., concurring). Accordingly, we find that the disclosure requirement of USFK Reg. 27–5 is constitutional.

▓▓▓ The power to compel disclosures will nonetheless come into conflict with the constitutional privilege against self-incrimination under certain circumstances. When such a conflict arises, courts must balance the public need for disclosure against the individual's need for constitutional protection. *California v. Byers*, 402 U.S. at 427–28, 91 S.Ct. at 1537–38. Neither interest can be treated lightly; consequently, such conflicts must be strictly scrutinized. *Id.* However, in order to interpose the defense of "constitutional immunity" afforded by the privilege, the claim must be both valid and timely. *United States v. Covington*, 395 U.S. 57, 89 S.Ct. 1559, 23 L.Ed.2d 94 (1969). We now consider the facts of the case at bar to determine the issue of whether the appellant's assertion of the privilege is valid and timely.

## II

### HAS THE APPELLANT ASSERTED A VALID CLAIM OF PRIVILEGE?

▓▓▓ Any invocation of the privilege is subject to judicial review: "the law does not permit the defendant to be the final arbiter of his own assertion's validity." *United States v. Neff*, 615 F.2d 1235, 1240 (9th Cir.1980). It is for the courts to decide

whether the privilege will lie.[2] *Hoffman v. United States*, 341 U.S. 479, 486, 71 S.Ct. 814, 818, 95 L.Ed. 1118 (1951). As a general rule, the declarant must demonstrate a reasonable belief that the disclosures sought "could be used in a criminal prosecution or could lead to other evidence that might so be used" in order to validly assert the privilege. *Kastigar v. United States*, 406 U.S. at 445, 92 S.Ct. at 1656. However, in those cases where the disclosure requirement focuses on activities which are inherently incriminating, the complete defense of the privilege against self-incrimination will adhere. *California v. Byers*, 402 U.S. at 429, 91 S.Ct. at 1538.

## A

■ Where disclosure is required from a "highly selective group inherently suspect of criminal activities" rather than a situation involving the "mere possibility" of incrimination, a court need look no further than the requirement itself in order to determine that the disclosures sought are incriminating. *See California v. Byers*, 402 U.S. at 429–30, 91 S.Ct. at 1538–39 (quoting *Albertson v. Subversive Activities Control Board*, 382 U.S. at 79, 86 S.Ct. at 199). *See also Marchetti v. United States, supra; Grosso v. United States, supra.* In other words, it is evident from the inquiry itself that a responsive answer to the question might incriminate. *Cf. Hoffman v. United States*, 341 U.S. at 486–87, 71 S.Ct. at 818.

■ The factors which this court must consider in determining whether the complete defense will apply without an affirmative showing of the incriminating nature of the responses are enumerated as follows. First, we must consider whether the reporting requirement occurs in an area "permeated with criminal statutes" or in an area "essentially noncriminal and regulatory." *California v. Byers*, 402 U.S. at 430, 91 S.Ct. at 1539 (citing *Albertson v. Subversive Activities Control Board, supra*, and *Marchetti v. United States, supra*). Second, we must consider whether the reporting requirement focuses on a "highly selective group inherently suspect of criminal activity" or on the public in general. *Compare Albertson v. Subversive Activities Control Board, supra*, with *California v. Byers, supra*. Finally, we must determine whether compliance would force an individual to provide information that "would surely prove a significant link in a chain of evidence tending to establish his guilt." *Marchetti v. United States*, 390 U.S. at 48, 88 S.Ct. at 703. Upon considering these factors, a court may conclude that the particular disclosures required under a regulatory or statutory scheme are inevitably self-incriminating. *See, e.g., Marchetti v. United States, supra; Grosso v. United States, supra.* Stated otherwise, we must determine whether the disclosure requirement set forth in USFK Reg. 27–5 requires an "inherently risky" disclosure of an "inherently illegal activity." *California v. Byers*, 402 U.S. at 431, 91 S.Ct. at 1539.

## B

■ Considering the disclosure requirement of USFK Reg. 27–5 in light of the factors identified above, we find the following. First, the disclosure requirement is one essentially regulatory in nature. The regulatory purpose underlying the regulation is the prevention of black market activities in violation of the tax and customs laws of the Republic of Korea. These laws are prescriptive in nature; that is, these laws require those engaging in regulated transactions to pay a tax on those transactions. By international agreement, Ameri-

---

**2.** As Judge Learned Hand has noted:

Obviously a witness may not be compelled to do more than show that the answer is likely to be dangerous to him, else he will be forced to disclose those very facts which the privilege protects. Logically, indeed, he is boxed in a paradox, for he must prove the criminatory character of what it is his privilege to suppress just because it is criminatory. The only practicable solution is to be content with the door's being set a little ajar, and while at times this no doubt partially destroys the privilege, and at times it permits the suppression of competent evidence, nothing better is available.

*United States v. Weisman*, 111 F.2d 260, 262 (2d Cir.1940).

can servicemembers are granted broad exemptions from these taxes and customs duties. Facilities and Areas and the Status of United States Armed Forces in Korea, articles IX, XIII, and XIV [hereinafter SOFA]. This international agreement also provides, however, that the United States armed forces "shall take such steps as are necessary to prevent abuse of [these] privileges" and shall render "all assistance within their power to ensure" the payment of duties and taxes. SOFA, article IX, paragraphs 8 and 9. The disclosure requirement compels those claiming the exemption to demonstrate that their activities and transactions are tax-exempt. The criminal sanctions which attend these requirements are enforcement provisions of an overall regulatory scheme. Merely engaging in the transactions subject to the disclosure requirement will not necessarily result in a criminal prosecution because the SOFA expressly permits the tax-free transfer of goods between persons qualifying for the exemption and implicitly permits the transfer of goods upon payment of the appropriate taxes when the transfer does not qualify for an exemption. Accordingly, the requirement is essentially regulatory in nature although criminal penalties may attend noncompliance.

Second, while the requirement focuses solely on those entitled to tax and customs exemptions, it does not focus on a "highly selective group inherently suspect of criminal activity." Importing or purchasing goods free from duty and the transfer of goods free from tax are not inherently criminal activities. Such activities may be entirely lawful. Consequently, the disclosure requirement poses only the "mere possibility" of self-incrimination. *Cf. California v. Byers, supra.*

Finally, disclosures made in compliance with the regulation will not in the usual circumstance provide the government with a significant link in a chain of evidence tending to establish guilt. Again, we stress that a servicemember may purchase items free from customs duty and transfer those goods to another entitled to the exemption without incurring tax, duty, or criminal penalty. Accordingly, the disclo-

sure required by USFK Reg. 27–5 will not "surely" provide evidence supporting a criminal prosecution.

Consequently, the disclosure requirement here is one where only a "mere possibility" of incrimination attends compliance with the regulatory mandate. Therefore, Williams was required to assert the incriminating nature of his responses in order to validate his claim of privilege. He failed to do so. Moreover, the incriminating nature of the ordered disclosure does not appear of record.

## III

### IS THE APPELLANT'S CLAIM OF PRIVILEGE TIMELY?

The privilege is available in any proceeding, "civil or criminal, administrative or judicial, investigatory or adjudicatory." *Kastigar v. United States*, 406 U.S. at 444, 92 S.Ct. at 1656. This protection extends only to *"compelled self-incrimination."* *United States v. Doe*, 465 U.S. 605, 610, 104 S.Ct. 1237, 1241, 79 L.Ed.2d 552 (1984). "Only the [declarant] knows whether the apparently innocent disclosure sought may incriminate him, and the burden appropriately lies with him to make a timely assertion of the privilege." *Garner v. United States*, 424 U.S. at 655, 96 S.Ct. at 1183. Consequently, any failure to invoke the privilege against self-incrimination *when the declarant has free choice to invoke* constitutes waiver of the privilege. *Garner v. United States*, 424 U.S. at 654, 96 S.Ct. at 1182. Conversely, where one invoking the privilege is threatened with adverse consequences for his claim, there is no free choice and, hence, no waiver. *See Garrity v. New Jersey*, 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967).

The regulation provides that violations of its provisions may be prosecuted under Article 92 of the Uniform Code of Military Justice. Because the regulation threatens criminal prosecution for failure to comply with the disclosure requirement, we find that failure to invoke the privilege at the time that disclosure was requested does not constitute waiver of the privilege.

*Cf. Garrity v. New Jersey, supra.* However, Williams' failure to assert the privilege at trial, his earliest opportunity to do so meaningfully and freely, waives the privilege. An accused may not assert the defense afforded by the privilege for the first time on appeal; invoking the privilege for the first time on appeal is not timely for purposes of the fifth amendment. *Garner v. United States, supra.*

Because appellant has failed both to demonstrate the validity of his assertion of privilege and to assert the privilege in a timely fashion, his claim to privilege on appeal must fail on these grounds. Accordingly, we affirm the findings of guilty and the sentence in *United States v. Williams,* ACMR 8700524.

### UNITED STATES V. KOH

Koh was tried by a military judge sitting as a general court-martial at Camp Casey, Korea. Pursuant to his pleas, Koh was convicted of desertion, violating a lawful regulation by failing to disclose as required by USFK Reg. 27–5, and wrongfully transferring duty-free goods in violation of that same regulation, violations of Articles 85, 10 U.S.C. § 885 and 92, UCMJ. Pursuant to a pretrial agreement, the convening authority approved his sentence to a bad-conduct discharge, confinement for one year, forfeiture of all pay and allowances, and reduction to Private E1 but suspended confinement in excess of six months for one year.

The parties stipulated to the following facts. In August 1987, Koh had become involved in black-marketing activities and had subsequently purchased and transferred to Korean nationals ten Sony televisions, one Panasonic video cassette recorder, one TEAC cassette deck, eight pair of JBL–4312 speakers, three Sansui M/S 3000 compact disc players, one Sony television stand, three Kenwood music systems, two television racks, three Pioneer laser disc players, "two wood golf sets," one Corning Cookware set, one pair of Bose 301 Speakers, one Hitachi video cassette recorder, one JBL Contor Speaker, and one AIWA music system, items of a

value exceeding $24,000.00. On 9 October 1987, a military police investigator "ordered" Koh to disclose the disposition of eight Sony television sets, one Panasonic video cassette recorder, one TEAC cassette deck, eight pair of JBL–4312 speakers, two Sansui M/S 3000 compact disc players, one Sony television stand, three Kenwood music systems, two television racks, three Pioneer laser disc players, and one AIWA music system, items of a value in excess of $22,000.00. According to the stipulation of fact, Koh "stated [to the investigator] that he had given some $5,000.00 worth of controlled goods to assorted Korean National relatives, none of whom were entitled to lawfully receive such goods." Koh did not move to suppress this statement, apparently in anticipation of his subsequent plea of guilty.

At trial, Koh moved to dismiss the specification which alleged failure to disclose arguing that the regulatory requirement was unconstitutional *per se.* As authority, Koh cited Article 31(a), UCMJ, and the congressional intent underlying this statute, as well as precedents of the Supreme Court to include *California v. Byers, supra,* and *Albertson v. Subversive Activities Control Board, supra.*

On appeal, Koh contends that the disclosure requirement of USFK Reg. 27–5 is unconstitutional *per se* in violation of the fifth amendment privilege against self-incrimination, that the requirement violates Article 31(a), UCMJ, and that the military judge erred in accepting his plea of guilty "in the face of plain violations of [his] fifth amendment rights by law enforcement personnel."

On 26 August 1988, this court ordered *en banc* consideration of the case in order to determine the following issues:

I

DID THE APPELLANT MAKE A TIMELY AND VALID ASSERTION OF THE DEFENSE AFFORDED BY THE PRIVILEGE AGAINST SELF–INCRIMINATION?

## II

DOES THE REQUIRED RECORDS EXCEPTION PRECLUDE APPELLANT'S RELIANCE ON THE DEFENSE?

## III

DID THE APPELLANT'S PLEA OF GUILTY WAIVE THE DEFENSE OF PRIVILEGE?

## IV

DID THE MILITARY JUDGE ERR IN ACCEPTING THE APPELLANT'S PLEA OF GUILTY?

Our disposition of these issues is set forth below.

## I

DID THE APPELLANT MAKE A TIMELY AND VALID ASSERTION OF THE DEFENSE AFFORDED BY THE PRIVILEGE AGAINST SELF–INCRIMINATION?

■ Appellant Koh's motion to dismiss the offense which alleged failure to disclose under the regulation was advanced on a number of theories, none of which asserted the substantive defense with specificity. First, Koh alleged that the regulatory disclosure provision violated Article 31(a), UCMJ, and the congressional intent underlying this statute. However, the sole remedy for violations of Article 31, UCMJ, is limited by express provision of Congress to the exclusion of derivative evidence. Article 31(d), UCMJ ("No statement obtained from any person in violation of this article ... may be received in evidence against him"). Accordingly, Article 31, UCMJ, was

an invalid premise upon which to base a motion to dismiss the specification alleging a violation of Article 92, UCMJ, by failing to "show and tell" as required by USFK Reg. 27–5.[3]

■ However, in our view, Koh's motion implicitly raised the substantive defense. Although his assertion that the regulation was "unconstitutional" was, as we have noted, erroneous, Koh's motion specifically cited the cases of *California v. Byers, supra, Albertson v. Subversive Activities Control Board, supra,* and *United States v. Sullivan,* 274 U.S. 259, 47 S.Ct. 607, 71 L.Ed. 1031 (1927), in challenging the constitutionality of the disclosure requirement of USFK Reg. 27–5. These cases should have alerted the military judge to the substantive defense afforded by the privilege. Additionally, Koh's motion also alleged that the subject matter of the disclosure request as applied to him was incriminating. Therefore, we find that Koh's motion, although inartfully drafted, was sufficient to raise the defense afforded by the fifth amendment privilege against self-incrimination in bar of his prosecution for failure to disclose. *Cf. Haynes v. United States,* 390 U.S. at 86 n. 1, 88 S.Ct. at 725 n. 1.

■ Koh, unlike Williams, has asserted the defense in a timely manner. The Supreme Court has also ruled that "a plea on motion to dismiss is plainly timely" because the defense is "capable of determination without the trial of the general issue." *United States v. Covington,* 395 U.S. at 60, 89 S.Ct. at 1561. In *Covington,* the Court concluded that such a motion was in the nature of a "plea in bar." *United States v. Covington,* 395 U.S. at 59 n. 2, 89 S.Ct. at

---

3. We note that, pursuant to an order which was not preceded by a rights advisement, Koh revealed to the investigator that he had disposed of some $5,000.00 worth of controlled items unlawfully. At trial, Koh did not move with specificity to suppress this statement. However, his motion for appropriate relief did refer to the provisions of Article 31, UCMJ, and alleged that the investigator suspected Koh of black-marketing activities at the time of the offense. Where those subject to the Code question or require disclosures from one whom they suspect or should reasonably suspect of a criminal offense, their inquiries must be preceded by a rights

advisement pursuant to *United States v. Tempia,* 37 C.M.R. 249 (C.M.A. 1967). *United States v. Morris,* 13 M.J. 297 (C.M.A. 1982). If no rights advisement is given, any evidence derived from noncompliance may not be received into evidence. *United States v. Tempia,* 37 C.M.R. at 259; Article 31(d), UCMJ. However, Koh subsequently entered a plea of guilty to the offense underlying this unwarned confession; consequently, any error which may have attended the military judge's ruling on this matter is waived. *United States v. Jackson,* 7 M.J. 647 (A.C.M.R. 1979). *See also United States v. Dusenberry,* 49 C.M.R. 536 (C.M.A. 1975).

1560 n. 2. Military law recognizes "motions in bar of trial" which, "while ordinarily not relating to the guilt or innocence of the accused, may result in a dismissal of the charges." *United States v. Jackson*, 20 M.J. 83, 85 (C.M.A.1985) (citing Manual for Courts–Martial, United States, 1969, Rev., para. 214(1)). *See United States v. Covington, supra. See also* Manual for Courts–Martial, United States, 1984, Rule for Courts–Martial 907 [hereinafter R.C. M.]. Therefore, Koh's assertion of the privilege was timely.

 Moreover, Koh's assertion of the defense appears valid: the incriminatory nature of the requested responses appear both on the face of the pleas entered and from the stipulation of fact. The court was barred from proceeding further because Koh had made out a *prima facie* case that the conduct for which he was being prosecuted was "constitutionally immune from punishment." *United States v. United States Coin & Currency*, 401 U.S. at 724, 91 S.Ct. at 1046. Because Koh had established a *prima facie* case of constitutional immunity, the court could not proceed absent an affirmative waiver of the privilege. *Cf. Leary v. United States*, 395 U.S. at 28–29, 89 S.Ct. at 1544. *See also United States v. Covington*, 395 U.S. at 60, 89 S.Ct. at 1561 (the issue of whether the privilege is waived is one of law). Accordingly, the military judge erred in denying Koh's motion to dismiss the specification alleging failure to disclose.

## II

### DOES THE REQUIRED RECORDS EXCEPTION PRECLUDE APPELLANT'S RELIANCE ON THE DEFENSE?

 The government, relying on *Shapiro v. United States*, argues that the defense afforded by the privilege should not lie for the disclosure requirement in issue. *See Shapiro v. United States*, 335 U.S. 1, 68 S.Ct. 1375, 92 L.Ed. 1787 (1948).

*See also Marchetti v. United States*, 390 U.S. at 57, 88 S.Ct. at 707. In essence, the government invokes the "required records doctrine" as an exception to the fifth amendment privilege. This doctrine applies where the government's regulatory interest is manifest and the government requires those engaged in regulated activities to create and maintain certain records. Because the documentation of the regulated activity is required by law and the individual assumes this obligation voluntarily, the element of compulsion necessary to a claim of the privilege is not present. *Shapiro v. United States, supra. See also California v. Byers, supra.* The power to require the creation and maintenance of the document implies the government's right to inspect those documents. *In re Grand Jury Subpoenas Duces Tecum*, 722 F.2d 981, 987 n. 5 (2d Cir.1983); *In re Grand Jury Proceedings*, 601 F.2d 162, 171 (5th Cir.1979). This exception does not run afoul of those applications of the privilege to business records as articulated in *United States v. Doe*, 465 U.S. 605, 104 S.Ct. 1237, 79 L.Ed.2d 552 (1984).[4] *United States v. Doe*, 465 U.S. at 607 n. 3, 104 S.Ct. at 1239 n. 3. Rather, the documents are analogous to "public records" to which the privilege does not adhere. *Grosso v. United States*, 390 U.S. at 67–68, 88 S.Ct. at 713–14. *See, e.g., In re Grand Jury Subpoena Duces Tecum Served upon Underhill*, 781 F.2d 64 (6th Cir.1986). Under this theory, the declarant is the mere custodian of the document for whom the privilege is not available notwithstanding any incriminatory information which might be contained within the records. *Cf. Braswell v. United States*, —— U.S. ——, 108 S.Ct. 2284, 101 L.Ed.2d 98 (1988).

 The government has failed, however, to identify any provision of USFK Reg. 27–5 upon which this court could premise application of the required records doctrine. The government argues, without reference to any paragraph of the regula-

---

**4.** Chief Judge Everett reads *Doe* as permitting only the search and seizure of such records and as precluding the compelled disclosure of such records. *United States v. Lee*, 25 M.J. at 465 (citing *United States v. Doe*, 465 U.S. at 612, 104

S.Ct. at 1242). However, this portion of the *Doe* opinion is concerned solely with the business records exception and not the required records exception.

tion, that "[t]he records required by the USFK regulation clearly fall within" the doctrine because "[e]veryone who purchases a designated 'controlled item' through armed forces facilities in Korea is required to keep accountability of the disposition of the item." Our examination of the regulation in question indicates that the only regulatory provision from which such a requirement could possibly be inferred is paragraph 18(b)(2). This paragraph only requires personnel to "present valid and bona fide information *OR* documentation [emphasis added]." While the regulation clearly requires an accounting, no record or document keeping requirement can be reasonably inferred from this paragraph even were we to interpret its language with aggressive liberality. The very fact that the provision is worded in the disjunctive implies that no record keeping requirement is intended by the regulation.

Consequently, if any records of Koh's black-marketing activities existed, the privilege would protect production of such records as business records rather than permit their production as required records. *Compare United States v. Doe, supra, with Shapiro v. United States, su-*

*pra.*[5] Therefore, because the privilege was available as a defense to Koh's prosecution for failure to disclose and because Koh's assertion of the privilege was both valid and timely, the military judge erred in denying Koh's motion to dismiss the specification alleging failure to comply with the disclosure requirement. *Cf. Haynes v. United States, supra.*

### III

## DID THE APPELLANT'S PLEA OF GUILTY WAIVE THE DEFENSE OF PRIVILEGE?

As a general rule in both Federal and military criminal practice, a guilty plea waives all nonjurisdictional issues. *Compare United States v. Joseph,* 11 M.J. 333, 335 (C.M.A. 1981), *with United States v. Gipson,* 835 F.2d 1323 (10th Cir.), *cert. denied,* —— U.S. ——, 108 S.Ct. 2038, 100 L.Ed.2d 623 (1988), *United States v. Taylor,* 814 F.2d 172 (5th Cir.), *cert. denied,* —— U.S. ——, 108 S.Ct 186, 98 L.Ed.2d 138 (1987), and *United States v. Broncheau,* 597 F.2d 1260 (9th Cir.), *cert. denied,* 444 U.S. 859, 100 S.Ct. 123, 62 L.Ed.2d 80 (1979).[6] This general waiver rule has appli-

---

**5.** In *United States v. Doe,* the Supreme Court reconsidered the "business records exception" articulated in *Fisher v. United States. Fisher v. United States,* 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976) (the contents of business records are ordinarily not privileged because they are created voluntarily and without compulsion). In *Doe,* the Supreme Court upheld a ruling of a Federal District Court that the compelled production of business records was "incriminating" under the circumstances of that case insofar as production would admit the existence of the records, the fact that the person to whom the subpoena was addressed was in control of the records, and the authenticity of the records. *United States v. Doe,* 465 U.S. at 613–614, 104 S.Ct. at 1242–1243. However, the opinion in *Doe* did not reach "those documents and records required by law to be kept or disclosed to a public agency." *United States v. Doe,* 465 U.S. at 607, 104 S.Ct. at 1239. Any incriminating admission that such records exist or are within the control of the one to whom the subpoena is addressed is wholly attenuated by the fact that the creation and maintenance of the record is required by law; accordingly, such records do not run afoul of the concerns expressed in *Doe.*

An excellent example of a statute to which the required records doctrine would apply may be

found in a New York statute which regulates vehicle "dismantlers." That statute provides in part:

> Every person required to be registered pursuant to this section shall maintain a record of all motor vehicles, trailers, and major component parts thereof, coming into his possession together with a record of the disposition of any such motor vehicle, trailer, or major component part thereof while in his possession. Such records shall be maintained in a manner and form prescribed by the commissioner.
>
> . . . . .
>
> Upon request of an agent of the commissioner or any police officer and during his regular and usual business hours, a vehicle dismantler shall produce such records and permit said agent or police officer to examine them.

N.Y.Veh. & Traf.Law § 415–a5 (McKinney 1986), *reprinted in New York v. Burger,* 482 U.S. 691, 107 S.Ct. 2636, 96 L.Ed.2d 601 (1987).

**6.** *See also United States v. Fairchild,* 803 F.2d 1121 (11th Cir.1986); *United States v. Simmons,* 763 F.2d 529 (2d Cir.1985); *Gioiosa v. United States,* 684 F.2d 176 (1st Cir.1982); *Smith v. United States,* 677 F.2d 39 (8th Cir.1982); *Kowalak v. United States,* 645 F.2d 534 (6th Cir.1981); *United States v. Kondos,* 509 F.2d 1147 (7th

cation to certain protections otherwise afforded by the fifth amendment privilege against self-incrimination. First, a guilty plea waives the right of the accused to refuse to testify and he may be required to give sworn testimony as to the providence of his guilty plea and as to matters relating to his guilt. *See United States v. Holt,* 27 M.J. 57 (C.M.A.1988); *United States v. Cowles,* 16 M.J. 467 (C.M.A.1983). Likewise, an accused waives any constitutional challenge he might have otherwise raised with respect to any confessions or statements made prior to trial. *See United States v. Mortimer,* 20 M.J. 964 (A.C.M.R. 1985). These waivers of fifth amendment matters—as well as waivers of other fifth amendment concerns not applicable to the military—have been approved by the United States Supreme Court. *McMann v. Richardson,* 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970) (confessions are not subject to constitutional challenge on appeal from conviction on guilty plea); *McCarthy v. United States,* 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969) (guilty plea waives the right to refuse to testify); *United States v. Gale,* 109 U.S. 65, 3 S.Ct. 1, 27 L.Ed. 857 (1883) (guilty plea waives defects in the grand jury process).

This waiver rule is not applied to every constitutional challenge premised upon the fifth amendment. The Supreme Court has ruled that a guilty plea does not waive a defense predicated upon the double jeopardy clause of the fifth amendment or a defense predicated upon the privilege against self-incrimination. *Menna v. New York,* 423 U.S. 61, 96 S.Ct. 241, 46 L.Ed.2d 195 (1975) (Court reversed conviction on grounds of double jeopardy despite guilty plea entered after unsuccessful assertion of claim); *Haynes v. United States, supra* (Court reversed conviction on grounds of asserted defense of privilege against self-incrimination despite guilty plea entered after unsuccessful assertion of claim).

The Supreme Court specifically addressed the effects of a guilty plea upon a timely and valid assertion of the defense afforded by the privilege in *Haynes v. United States.* In *Haynes,* the defendant was charged with violating the National Firearms Act, 26 U.S.C. § 5851, in failing to register a certain firearm as required by statute. On denial of his motion to dismiss the charge on the ground that the requirement violated his privilege against self-incrimination, the defendant pled guilty and appealed. The Supreme Court, in reversing an affirmance of conviction by the United States Court of Appeals for the Fifth Circuit, noted that "[p]etitioner's plea of guilty did not, of course, waive his previous claim of the constitutional privilege." *Haynes v. United States,* 390 U.S. at 87 n. 2, 88 S.Ct. at 725 n. 2 (citing *United States v. Ury,* 106 F.2d 28 (2d Cir.1939)).

In *Ury,* the defendant was charged with violating a provision of the Tariff Act of 1930. He demurred on the ground that the statute was unconstitutional and, following an adverse ruling on his demurrer, pled guilty. The United States Court of Appeals for the Second Circuit held:

> The questions presented put in issue whether the statute is constitutional and whether the information charged a crime. The plea of guilty did not foreclose the appellant from the review he now seeks [on appeal].

*United States v. Ury,* 106 F.2d at 28. This ruling brought the case within the ambit of the exceptions to the waiver rule. *See* 1 Wright, Federal Practice and Procedure: Criminal § 175b ("A defendant who has pleaded guilty is not barred from claiming that the indictment or information failed to state an offense, or that the pleading showed on its face that the prosecution was barred by the statute of limitations"). Subsequent decisions by the Federal circuit courts demonstrate, however, that the Supreme Court's note, without elaboration or explanation, was the source of confusion.[7]

---

Cir.1975); *United States v. Smith,* 448 F.2d 726 (4th Cir.1971); and *Woodward v. United States,* 426 F.2d 959 (3d Cir.1970).

**7.** Courts have followed the *Haynes* ruling of non-waiver on a number of rationales. Some

hold that a guilty plea does not waive the issue on the grounds that the constitutionality of the statute is in question. *See, e.g., Coleman v. Burnett,* 477 F.2d 1187 (D.C.Cir.1973); *United States v. Cox,* 464 F.2d 937 (6th Cir.1972); and

In decisions subsequent to *Haynes*, the ruling that a guilty plea does not waive the issue appears to be based on a jurisdictional theory because the conduct cannot be "constitutionally punished in the first instance." *Scogin v. United States*, 446 F.2d 416, 419 (8th Cir.1971). In *United States v. United States Coin & Currency*, 401 U.S. 715, 91 S.Ct. 1041, 28 L.Ed.2d 434 (1971), the Supreme Court considered a government appeal from an appellate court ruling ordering the return of money which a trial court had ordered forfeit upon a finding that it had been used in violation of the same gambling tax statute and gambler registration statute considered in the *Marchetti* and *Grosso* decisions. In *United States Coin & Currency*, the Court ruled:

> In the case before us, however, even the use of impeccable factfinding procedures could not legitimate a verdict decreeing forfeiture, for we have held that the conduct being penalized is *constitutionally immune from punishment.*

*United States v. United States Coin & Currency*, 401 U.S. at 724, 91 S.Ct. at 1046 (emphasis added). The Supreme Court case of *Menna v. New York, supra*, best sets forth this nonwaiver rule.

In *Menna*, the Supreme Court ruled that a plea of guilty does not waive the fifth amendment protection against double jeopardy. In *Menna*, the Court stated:

> Where *the State is precluded by the United States Constitution from haling a defendant into court* on a charge, federal law requires that a conviction on that charge be set aside even if the con-

viction was entered pursuant to a counseled plea of guilty.

*Menna v. New York*, 423 U.S. at 62, 96 S.Ct. at 242 (emphasis added). This holding is echoed in *Leary v. United States*, a case premised upon the defense afforded by the privilege, where the Court stated:

> The aspect of the self-incrimination privilege which was involved in *Marchetti*, and which petitioner asserts here, is not the undoubted right of an accused to remain silent at trial. It is instead the right not to be criminally liable for one's previous failure to obey a statute which required an incriminatory act.

*Leary v. United States*, 395 U.S. at 28, 89 S.Ct. at 1544.

Our superior appellate court seems to have adopted this same position. *Cf. United States v. Hoff*, 27 M.J. 70 (C.M.A.1988) (the privilege against self-incrimination may excuse noncompliance with the duty to report crimes). The rationale underlying the rule appears in a footnote in the *Menna* case:

> [A] counseled plea of guilty is an admission of factual guilt so reliable that, where voluntary and intelligent, it *quite validly* removes the issue of factual guilt from the case. In most cases, factual guilt is a sufficient basis for the State's imposition of punishment. A guilty plea therefore, simply renders irrelevant those constitutional violations not logically inconsistent with the valid establishment of factual guilt and which do not stand in the way of conviction, if factual guilt is validly established. Here, however, the claim is that the State may not convict petitioner no matter how validly

---

*United States v. D'Amato*, 436 F.2d 52 (3d Cir. 1970). Others interpret the language in *Haynes* as carving out a special exception for an absolute constitutional defense. *See, e.g., Bannister v. United States, supra; United States v. Weber*, 429 F.2d 148 (9th Cir.1970); and *United States v. Lucia*, 416 F.2d 920 (5th Cir.1969). Some simply state that the issue is "constitutional." *See, e.g., United States v. Sepe*, 474 F.2d 784 (5th Cir.1973); and *United States v. Miller*, 406 F.2d 1100 (4th Cir.1969). Still others hold that the defense is not waived on the premise that the plea was either unknowing or uninformed because the defense was unknown at the time the defendant entered his plea. *See, e.g., United*

*States v. Broadus*, 450 F.2d 639 (D.C. Cir.1971); *Navarro v. United States*, 449 F.2d 113 (9th Cir. 1971); *Hupert v. United States*, 448 F.2d 668 (8th Cir.1971); *Scogin v. United States*, 446 F.2d 416 (8th Cir.1971); and *United States v. Michael*, 426 F.2d 1067 (7th Cir.1970). Others simply cite *Haynes* without offering a rationale. *United States v. Sams*, 521 F.2d 421 (3d Cir.1975). Others indicate that the government is constitutionally without jurisdiction to try the case. *See, e.g., United States v. Williams*, 412 F.2d 625 (3d Cir.1969). Subsequent Supreme Court decisions indicate that the matter is jurisdictional in nature insofar as the court cannot try the accused for the charged offense.

his factual guilt is established. The guilty plea, therefore does not bar the claim.

*Menna v. New York*, 423 U.S. at 62–63 n. 2, 96 S.Ct. at 242 n. 2. Therefore, it appears that, first, the non-waiver rule announced in *Haynes* is premised upon a valid challenge to the jurisdiction of the court to constitutionally adjudicate a conviction and, second, that this rule has application to the case at bar. *Cf. Haynes v. United States, supra; United States v. Hoff, supra.* Accordingly, Koh's plea of guilty did not waive the issue presented by the constitutional defense.[8]

## IV

### DID THE MILITARY JUDGE ERR IN ACCEPTING THE APPELLANT'S PLEA OF GUILTY?

 Notwithstanding the foregoing constitutional analysis and finding of error, an additional matter peculiar to military law requires this court to set aside Koh's conviction. Where affirmative defenses or statutory defenses appear of record either with respect to the plea or during the providence inquiry, military due process requires an affirmative waiver or disclaimer of that defense. Even though the statements of an accused during the providence inquiry may be entirely consistent with his plea of guilty, the plea may yet be uninformed should his colloquy suggest an affirmative defense. *Compare United States v. Jemmings*, 1 M.J. 414 (C.M.A. 1976), *with* R.C.M. 907(b)(2)(B). When an accused's responses during the providence inquiry suggest that an affirmative defense might be available, *Jemmings* indicates that the military judge must at a minimum advise the accused of the elements of the defense and obtain a "satisfactory disclaimer" of that defense. *United States v. Jemmings*, 1 M.J. at 418. When properly advised on the record of the elements of the defense, the accused's understanding of the meaning and effect of his plea of guilty is no longer subject to

question. *Id.* This same rule applies with respect to statutory defenses such as the defense afforded by the statute of limitations. R.C.M. 907(b)(2)(B). In accordance with these precedents, we hold that a similar disclaimer must be obtained in those cases where the constitutional defense afforded by the fifth amendment appears of record.

 Koh pleaded guilty to failing to disclose the disposition of certain controlled items in violation of the regulatory provision now under review. These items included eight Sony television sets, one Panasonic video cassette recorder, one TEAC cassette deck, eight pair of JBL–4312 speakers, two Sansui M/S 3000 compact disc players, one Sony television stand, three Kenwood music systems, two television racks, three Pioneer laser disc players, and one AIWA music system, items of a value in excess of $22,000.00. Koh also entered a plea of guilty to disposing of controlled items in violation of that same regulation. These items included ten Sony televisions, one Panasonic video cassette recorder, one TEAC cassette deck, eight pair of JBL–4312 speakers, three Sansui M/S 3000 compact disc players, one Sony television stand, three Kenwood music systems, two television racks, three Pioneer laser disc players, "two wood golf sets," one Corning Cookware set, one pair of Bose 301 Speakers, one Hitachi video cassette recorder, one JBL Contor Speaker, and one AIWA music system, items of a value exceeding $24,000.00. Both of these offenses were the subject of a confessional stipulation of fact which included a listing of all of these items. Additionally, Koh's responses during the plea inquiry reiterated this same information without contradiction.

The providence inquiry and the stipulation of fact set forth the illegal dispositions of the items for which disclosure was ordered. The incriminating effect of the disclosure order was apparent. Obviously, the defense afforded by the privilege

---

**8.** We note that the United States Air Force Court of Military Review has in similar cases ruled that the issue is waived by an accused's plea of guilty. *See United States v. Jones*, 26 M.J. 632, 634 (A.F.C.M.R.1988).

against self-incrimination was raised with respect to the items for which disclosure was sought. *Cf. United States v. Reed*, 24 M.J. 80 (C.M.A.1987). *But see United States v. Hanson*, 24 M.J. 377, 379 (C.M.A. 1987) (citing *Reed* for the proposition that the providence inquiry elicited facts inconsistent with guilt). Consequently, the plea of guilty in this case violates those standards announced in *Jemmings*. Even had the items not been the subject of a confessional stipulation and of the colloquy, the pleas entered were sufficient to raise the issue. *Cf. United States v. Dock*, 26 M.J. 620, 623 (A.C.M.R.1988) (the providency of pleas is determined from the four corners of the record). As enumerated within the specification alleging the failure to disclose, the controlled items for which disclosure was ordered are mirrored by the list of items enumerated within the specification alleging unlawful disposition. Therefore, we find that Koh's plea of guilty was improvident because the military judge did not obtain an affirmative withdrawal of the constitutional defense.

Accordingly, in *United States v. Koh*, ACMR 8702646, the finding of guilty of Specification 1 of the Additional Charge is, on the basis of the error noted, set aside and that specification is dismissed. The remaining findings of guilty are affirmed. Reassessing the sentence on the basis of the error noted and the entire record, we affirm the sentence.

Chief Judge HOLDAWAY, Senior Judge DeFORD, Senior Judge MYERS, Senior Judge FELDER, Judge CARMICHAEL, Judge WERNER and Judge BASHAM concur.

GILLEY, Judge, with whom Judge GIUNTINI concurs, concurring in part and dissenting in part:

Koh pleaded guilty, pertinently, to violating United States Forces Korea Regulation 27–5, 25 October 1983 [hereinafter USFK Reg. 27–5], a lawful general regulation, by failing to disclose his continued possession or lawful disposition of items he brought into Korea duty-free or acquired there without the payment of duty or tax. In this appeal, Koh asserts that the fifth amendment precluded his prosecution for failure to disclose in accordance with the regulation. *See United States v. Covington*, 395 U.S. 57, 60, 89 S.Ct. 1559, 1561, 23 L.Ed.2d 94 (1969); *Cf. Haynes v. United States*, 390 U.S. 85, 86 n. 1, 88 S.Ct. 722, 725 n. 1, 19 L.Ed.2d 923 (1968).

The initial question in this case is whether the fifth amendment adheres to and thereby renders nonpunishable failure to comply with this command-imposed duty to disclose. Before we can attempt to overlay to the military environment application of the fifth amendment to civilian laws and in civilian contexts, we must assess the nature and extent of the military authority exercised in this regulation.

Our Status of Forces Treaty with the Republic of Korea requires that the Commander–in–Chief, U.S. Forces Korea "shall take such steps as are necessary to prevent abuse of [the] privileges" American servicemembers enjoy to import and purchase property with broad exemption from Korean taxes and customs duties. Further, the American command must render "all assistance within [its] power to ensure the payment of duties and taxes." Facilities and Areas and the Status of Forces in Korea, articles IX, paragraphs 8 and 9, XIII, and XIV [hereinafter SOFA]. This court has held that "[t]he control of black market activities [is] an appropriate subject of governmental concern and the [disclosure provision of the] regulation [is] a valid exercise of that legitimate interest." *United States v. Lindsay*, 11 M.J. 550, 551 (A.C.M.R.), *petition denied*, 11 M.J. 361 (C.M.A.1981). The factual determinations made by this court in *United States v. Battle*, 20 M.J. 827, 828 (A.C.M.R.), *petition denied*, 21 M.J. 317 (C.M.A.1985), bear repeating here:

[T]he United States Army sends military forces into the sovereign nation of the Republic of Korea for mutually beneficial reasons of national security; the appellant was a noncommissioned officer on active duty in the United States Army and stationed in the Republic of Korea at the time of his offenses; the import and

export of goods to and from the Republic of Korea by members of the United States Armed Forces are matters of political concern between the Republic of Korea and the United States of America; the SOFA contains vital agreements concerning sensitive customs matters and identifies certain related rights and obligations attending members of our Armed Forces who are stationed in the Republic of Korea; and, USFK Reg. 27–5 is designed, in part, to prohibit conduct by members of our force which would violate the spirit and scope of the SOFA, particularly with respect to customs control.

This area, then, is appropriate for regulations of general application. *See Kastigar v. United States*, 406 U.S. 441, 443–44, 92 S.Ct. 1653, 1655–56, 32 L.Ed.2d 212 (1972) (fifth amendment an exception to the essential power of the sovereign to compel disclosures); *California v. Byers*, 402 U.S. 424, 427–28, 91 S.Ct. 1535, 1537–38, 29 L.Ed.2d 9 (1971) (statute required drivers of motor vehicles involved in automobile accidents to stop and report their names and addresses); *Shapiro v. United States*, 335 U.S. 1, 17, 68 S.Ct. 1375, 1384, 92 L.Ed. 1787 (1948).

This regulation has the desirable feature of notifying servicemembers when they come to Korea that should they import or purchase controlled items in Korea without payment of Korean customs or taxes, they are responsible to account for their continued possession or lawful disposition of this property. Thus, they voluntarily assume the duty to account, which is a central facet of the "required records doctrine" set forth in *Wilson v. United States*, 221 U.S. 361, 380, 31 S.Ct. 538, 544, 55 L.Ed. 771 (1911):

> The physical custody of incriminating documents does not of itself protect the custodian against their compulsory production. The question still remains with respect to the nature of the documents and the capacity in which they are held. It may yet appear that they are of a character which subjects them to the scrutiny demanded and that the custodian has voluntarily assumed a duty which overrides his claim of privilege.... The

principle applies not only to public documents in public offices, but also to records required by law to be kept in order that there may be suitable information of transactions which are the appropriate subjects of governmental regulation and the enforcement of restrictions validly established. There the privilege, which exists as to private papers, cannot be maintained.

Effective notice is presumed as a matter of law because this regulation is a lawful general regulation under Article 92, Uniform Code of Military Justice [hereinafter UCMJ], 10 U.S.C. § 892 (1982).

We must ask the extent to which USFK Reg. 27–5 is constitutionally permissible in application different than the formulation in civilian contexts for the required records doctrine. Generally, the Supreme Court has formulated a three-part requirement: first, the regulatory provisions require the keeping and preserving of records; second, the records have "public" aspects because they are reasonably related to an authorized governmental function; and third, the requirement is not directed toward a "selective group inherently suspect of criminal activities." *Marchetti v. United States*, 390 U.S. 39, 57, 88 S.Ct. 697, 707, 19 L.Ed. 2d 889 (1968). This regulation serves a valid public purpose, the implementation of American foreign policy. Moreover, the unified commander has established a broad program of regulation and enforcement that is not aimed at a "selective group inherently suspect" of breaches of these laws. The focal question then is whether in this situation the unified commander can specify a punitive sanction for failure to present information or documentation on demand regarding the regulated property.

We have already accepted that on its face this order appeared to require a routine military duty. Obedience of these types of orders ordinarily and reasonably require a verbal response or volitional activity of a communicative nature. For example, when part of a soldier's required gear seems to be missing, he may be asked by a superior, "where are your ammunition pouches?" In *United States v. Smith*, 4

M.J. 210, 214 (C.M.A.1978), an order to participate in physical fitness training was enforceable by punishment even though compliance would have shown that the servicemember had been malingering.

The Commander-in-Chief, United States Forces–Korea, has an abiding interest in the stability of the Korean government, in view of the potential for involvement of American forces in combat in that area. Thus, we see no significant reason for a different test here than we apply for ordinary dealing with military property. Inspections, of course, are permissible for many military purposes, when based on an objective articulated reason, and reasonably carried out. *See* Manual for Courts–Martial, United States, 1984, Military Rule of Evidence 313.

On reflection, this accounting requirement regarding personal property is similar to an inspection and is not unexpected or significantly intrusive. Servicemembers in Korea, as do we, appreciate that black-marketing is difficult to deter and detect. Furthermore, soldiers expect intrusions into their personal activities that their commanders reasonably perceive as needed to carry out valid military responsibilities. *Cf. United States v. Bickel*, 27 M.J. 638, 641, (A.C.M.R.1988) (citing *New York v. Burger*, 482 U.S. 691, 107 S.Ct. 2636, 96 L.Ed.2d 601 (1987), for the proposition that there exists a diminished expectation of privacy in military life).

The nonspecific accounting permitted by this regulation is not void for vagueness. In this context, no one can predict all the ways a servicemember may be able to show he possesses or has lawfully disposed of the property. He might still possess it, he might have broken and discarded it, or he might have sent it home. Indeed, the regulation provides a beneficial flexibility not unusual in the military where a soldier's word normally must be taken as his bond. A more cumbersome and intrusive system could have been implemented, one requiring the servicemember to report to his commander *each time* he lawfully disposed of any item subject to the regulation. That degree of regulation or limitation on the free transfer of property would be oppressive and smack of "Big Brother."

The long life of this regulatory provision, in effect for a number of years, argues strongly for its reasonableness. This regulatory system is analogous to constitutionally permissible broad military inspections for contraband property. Viewed from the standpoint of vesting appropriate discretion in commanders to regulate and recognizing needed practicality for soldiers to comply, in the balance, the disclosure requirement of USFK Reg. 27–5 meets the specificity concern in the Constitution. The foreseeable means of accounting here, by information or documentation, are the functional equivalent of the required documents listed in *Shapiro* for which one became the custodian. The option of providing information instead of documents—for example, when there are no documents—is a reasonable one in our judgment. Even a good faith mistake by a servicemember that he had sufficient information or documentation would preclude unwarranted jeopardy of conviction for violation of the disclosure requirement.

Without doubt, the Commander–in–Chief, United States Forces–Korea, had an objective basis for establishing the disclosure requirement under review. Also, the degree of intrusion was reasonably related in scope to ensure the treaty-based responsibility was met. *Cf. United States v. Middleton*, 10 M.J. 123, 128 (C.M.A.1981); *United States v. Valenzuela*, 24 M.J. 934, 937 (A.C.M.R.1987).

Though the disclosure requirement was constitutionally permissible, Koh could have claimed a substantive fifth amendment and Article 31(a), UCMJ, privilege that for him to disclose would result in self-incrimination.[1] However, unless an accused asserts the privilege against self-incrimination at the time for response to the order, he has forgone the protection of

---

1. Article 31(a), UCMJ, seems to encompass all the substantive protection of the fifth amendment.

Article 31(a), UCMJ.[2] *See Garner v. United States*, 424 U.S. 648, 656, 96 S.Ct. 1178, 1183, 47 L.Ed.2d 370 (1976) (witnesses must claim the fifth amendment privilege when disclosure required, or they waive it by making the disclosure). Koh could have had the protection of the fifth amendment and Article 31(a), UCMJ, had he claimed it at the time he was ordered to disclose his possession or lawful disposition of the property. That he did not do so precludes the operativeness of Article 31(a), UCMJ. *See United States v. Smith*, 4 M.J. at 214. Thus, we see no reason for the fifth amendment to adhere to this case substantively. Additionally, Koh's guilty plea waived any applicability of the protection of Article 31(b), UCMJ,[3] for interrogation as a suspect without informed waiver of his rights to silence and counsel. *See McMann v. Richardson*, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970) (confessions not subject to constitutional challenge on appeal from conviction on guilty plea).

I would affirm the findings of guilty and the sentence in both cases.

SMITH, Judge, with whom Senior Judge COKER and Judge KENNETT concur, dissenting:

I find that subparagraph 18b(2) of United States Forces–Korea Regulation 27–5, 25 October 1983 [hereinafter USFK Reg. 27–5], is *per se* unconstitutional as violative of the fifth amendment. The fifth amendment states in part that no person shall "be compelled in any criminal case to be a witness against himself." The regulation circumvents the Constitution by permitting "testimonial silence" to be used as the basis for criminal convictions. It does so, in effect, by ordering soldiers to be crime free. A soldier's failure to comply with the regulation's requirement to prove innocence concedes guilt. Absent the protection of the Constitution, a situation has been deliberately created in which soldiers are compelled to be witnesses against themselves.[1] *See United States v. Lee*, 25 M.J. 457, 464–465 (C.M.A.1988) (Everett, C.J., concurring).

It is painfully clear, despite arguments to the contrary, that the regulation is most often used when a soldier is suspected of unlawful sale or transfer of controlled items. I find it repugnant and logically inconsistent to, under any circumstance, look a soldier in the eye and tell him that our Constitution guarantees him the right to remain silent but that as a soldier he is ordered to produce certain information and that if he exercises the right to remain silent we will prosecute him. *See Albertson v. Subversive Activities Control Board*, 382 U.S. 70, 86 S.Ct. 194, 15 L.Ed. 2d 165 (1965) (requiring members of the Communist Party to register as such when membership itself was a criminal offense is inconsistent with the protections under the Self–Incrimination Clause of the fifth amendment).

**2.** Article 31(a), UCMJ, sets forth the following: "No person subject to this chapter may compel any person to incriminate himself or to answer any question the answer to which may tend to incriminate him."

**3.** Article 31(b), UCMJ, states as follows:
No person subject to this chapter may interrogate, or request any statement from an accused or a person suspected of an offense without first informing him of the nature of the accusation and advising him that he does not have to make any statement regarding the offense of which he is accused or suspected and that any statement made by him may be used as evidence against him in a trial by court-martial.

**1.** Here, the government does not require a continuous accounting record but instead bases violations upon a soldier's failure to respond to an order to account for controlled items. There is a substantive difference between a prosecution for failure to maintain proper records and failure to obey an order to prove innocence. Indeed the regulation in these cases does not meet the requirements of the required records doctrine announced in *Shapiro v. United States*, 335 U.S. 1, 68 S.Ct. 1375, 92 L.Ed. 1787 (1948), because of its failure to require the keeping and preserving of records. *See Marchetti v. United States*, 390 U.S. 39, 57, 88 S.Ct. 697, 707, 19 L.Ed.2d 889 (1968) (the required records doctrine did not apply where *inter alia* petitioner was not required to keep records but to provide information which was "not significantly different from a demand that he provide oral testimony.")

In this case, a soldier is ordered to prove lawful disposition and failure to obey that order is itself a criminal offense. The process by which the Army extracts or attempts to extract incriminating evidence in these cases is directly contrary to the spirit and intent of the fifth amendment. Such a procedure is particularly reprehensible within a military context where soldiers who are trained to respond to commands are virtually powerless before superior authority.

The constitutional privilege against self-incrimination is essentially a personal one, applying only to natural individuals. It grows out of the high sentiment and regard of our jurisprudence for conducting criminal trials and investigatory proceedings upon a plane of dignity, humanity and impartiality. *It is designed to prevent the use of legal process to force from the lips of the accused individual the evidence necessary to convict him or to force him to produce and authenticate any personal documents or effects that might incriminate him.* Physical torture and other less violent but equally reprehensible modes of compelling the production of incriminating evidence are thereby avoided. *The prosecutors are forced to search for independent evidence instead of relying upon proof extracted from individuals by force of law [or military order]. The immediate and potential evils of compulsory self-disclosure transcend any difficulties that the exercise of the privilege may impose on society in the detection and prosecution of crime.* While the privilege is subject to abuse and misuse, it is firmly embedded in our constitutional and legal frameworks as a bulwark against iniquitous methods of prosecution.

*United States v. White*, 322 U.S. 694, 698, 64 S.Ct. 1248, 1251, 88 L.Ed. 1542 (1944) (emphasis added).

Accordingly, I would in *both* cases set aside the findings of guilty related to USFK Reg. 27–5 and the sentence, dismiss the specifications relating to paragraph 18b(2), affirm the findings of guilty to those charges unrelated to USFK Reg.

27–5 and authorize a rehearing on the charges of wrongful transfer and purchase of controlled items under USFK Reg. 27–5 and the sentence. If a rehearing on those remaining charges related to USFK Reg. 27–5 is deemed impractical, I would authorize the convening authority to dismiss those charges and order a rehearing on the sentence only.

Senior Judge THORNOCK did not participate in this decision.