## BALTIMORE CITY DEPARTMENT OF SOCIAL SERVICES *v.* BOUKNIGHT

No. A–494.   Decided December 21, 1988

CHIEF JUSTICE REHNQUIST, Circuit Justice.

The Baltimore City Department of Social Services (DSS) has asked me to stay the judgment of the Court of Appeals of Maryland in this case, *In re Maurice*, No. 50 (Dec. 19, 1988). The Court of Appeals held that Jacqueline Bouknight's confinement for civil contempt violated the privilege against self-incrimination secured to her by the Fifth Amendment to the United States Constitution. Bouknight is presently incarcerated until she either presents her child, Maurice M., to the DSS or tells where the child can be found. There is no indication that she is unable to comply in one way or the other.

When Maurice was three months old, he was admitted for treatment of a fractured left leg. X rays disclosed that the child had previously suffered multiple fractures of various other major bones. Nurses and others observing Maurice's mother at the hospital reported her unusual conduct with the child, including shaking him and dropping him into his crib when he was in a cast. Because of the suspicious nature of Maurice's injuries at such a young age, DSS obtained authorization to place the child in foster care. It then filed a petition in the Circuit Court for Baltimore City seeking a determination that Maurice was a "child in need of assistance" under Maryland law, Md. Cts. & Jud. Proc. Code. Ann. § 3–801(e) *et seq.* (1984 and Supp. 1988). Maurice was found to be such.

By agreement of the parties, Bouknight received custody of Maurice under an order of protective supervision specifying that she accept parenting assistance, attend classes, and refrain from corporal punishment of the child. Some months later, DSS advised the court that Bouknight had ceased cooperating with it, and that she had refused to produce the child or tell DSS where he was. DSS feared for Maurice's safety because Bouknight was not complying with the court order, because of her history of child abuse, because of her known use of drugs and current threats to kill herself, and

because Maurice had not been seen for nearly a month and could not be located by DSS or the police.

Bouknight did not attend the hearing set to consider these representations, but was later arrested and ordered to disclose the whereabouts of Maurice. After giving a false answer, she was jailed until she purged herself of contempt by either producing Maurice or revealing his location.

The Court of Appeals of Maryland granted certiorari and heard the case without decision by the state intermediate appellate court. It found that the terms of Bouknight's confinement violated her privilege against compulsory self-incrimination. Noting that some acts of production have been found testimonial, see *United States* v. *Doe*, 465 U. S. 605 (1984), it concluded that the act of producing Maurice would necessarily admit a measure of continuing control over the child which might be relevant in a subsequent criminal prosecution. That risk, it thought, was so substantial that it could not be outweighed by any governmental interest in finding Maurice. Two judges dissented. They argued that there were no testimonial components to compliance with the civil contempt order; that if there were, they were clearly outweighed by the public interest in protecting children from abuse; and that Bouknight had waived any Fifth Amendment privilege against disclosing Maurice's whereabouts when she accepted conditional custody of the child from the city.

In my opinion DSS meets the requirements we have established for the issuance of a stay. See *Rostker* v. *Goldberg*, 448 U. S. 1306 (1980) (BRENNAN, J., Circuit Justice); *California* v. *Riegler*, 449 U. S. 1319, 1321 (1981) (REHNQUIST, J., Circuit Justice). First, the decision of the Court of Appeals of Maryland is unquestionably based on the United States Constitution. Second, I think the balance of equities favors the granting of a stay. There is undoubtedly a burden on Bouknight's liberty caused by her confinement, but against it must be weighed a very real jeopardy to a child's safety, well-being, and perhaps even his life. There is hard

evidence in this case suggesting Bouknight has abused Maurice in the past and may well do so again. If she is permitted to go free, DSS may not have an alternative means of obtaining information about the child or of locating the child.

Finally, I conclude that it is likely that four Justices of this Court will vote to grant certiorari in this case, and that DSS has a fair prospect of persuading a majority of the Court that the decision of the Court of Appeals of Maryland was erroneous. Of the claims made in the application to me, I think two fit this category. The first is an important question about whether acts — such as the act of production of Maurice on the part of Bouknight — would constitute testimony for purposes of the Fifth Amendment. See *United States* v. *Doe, supra; Fisher* v. *United States*, 425 U. S. 391, 411–412 (1976); *Schmerber* v. *California*, 384 U. S. 757 (1966).

Second, and in my view equally as important, is whether even assuming there is a testimonial element in the act of surrendering Maurice, the Fifth Amendment privilege is available in this situation. In *California* v. *Byers*, 402 U. S. 424 (1971), we upheld a California law making it a crime to leave the scene of an automobile accident without giving one's name and address. In that case we recognized that "[t]ension between the State's demand for disclosures and the protection of the right against self-incrimination" must "[i]nevitably . . . be resolved in terms of balancing the public need on the one hand, and the individual claim of constitutional protections on the other." *Id.*, at 427 (plurality opinion of Burger, C. J.). This plurality found it significant that the law "was not intended to facilitate criminal convictions but to promote the satisfaction of civil liabilities," *id.*, at 430, and was not aimed at a " 'highly selective group inherently suspect of criminal activities.' " *Ibid.*, quoting *Albertson* v. *Subversive Activities Control Board*, 382 U. S. 70, 79 (1965).

"Considering the noncriminal governmental purpose in securing the information, the necessity for self-reporting as a means of securing the information, and the nature of the dis-

closures involved, I cannot say that the purposes of the Fifth Amendment warrant imposition of a use restriction as a condition on the enforcement of this statute." 402 U. S., at 458 (Harlan, J., concurring in judgment.)

In *New York* v. *Quarles*, 467 U. S. 649 (1984), we recognized a public safety exception to the usual Fifth Amendment rights afforded by *Miranda* v. *Arizona*, 384 U. S. 436 (1966), so that police could recover a firearm which otherwise would have remained in a public area. In the present case, a citation for civil contempt in order to obtain the production of a child such as Maurice, or knowledge about his whereabouts, is not essentially criminal in nature and aims primarily at securing the safety of the child. Protecting infants from child abuse seems to me to rank in order of social importance with the regulation and prevention of traffic accidents.

The DSS has offered to file a petition for certiorari within 35 days. The stay requested is therefore granted, pending consideration of a timely petition for certiorari and disposition of the same by the Court. If the petition is granted, the stay shall remain in effect until the Court disposes of the case or otherwise orders.