**UNITED STATES**

v.

**Senior Airman Theressie JONES, FR
587–92–2367, United States
Air Force.**

**ACM 25904 (f rev).**

U.S. Air Force Court of Military Review.

Sentence Adjudged 18 Dec. 1986.

Decided 14 March 1990.

Appellate Counsel for the Appellant: Colonel Richard F. O'Hair, Colonel Leo L. Sergi and Lieutenant Colonel Patrick C. Sweeney.

Appellate Counsel for the U.S.: Colonel Joe R. Lamport, Colonel Robert E. Giovagnoni and Captain Marc Van Nuys.

Before HODGSON, FORAY, BLOMMERS, SPILLMAN, LEONARD KASTL, MURDOCK and PRATT, Appellate Military Judges, En Banc.

DECISION UPON FURTHER REVIEW

BLOMMERS, Senior Judge:

This is another case remanded to us by the United States Court of Military Appeals for consideration of the constitutionality of provisions in a general regulation

requiring members of the U.S. forces in the Republic of the Philippines (hereinafter the RP) to show possession or authorized disposition of tax-exempt property when directed to do so by cognizant authorities.*

## I

■ We recently set forth our views about the constitutionality of the so-called "show and tell" provisions in these overseas merchandise control regulations in *United States v. Hilton,* 29 M.J. 1036 (A.F. C.M.R.1990), *aff'd* 30 M.J. 118 (C.M.A. 1990) (Summary Disposition). We abide by those views. We held that, based on the "required records" doctrine developed by the United States Supreme Court, the accounting requirements in such regulations are not *per se* unconstitutional. *Hilton,* at 1046. *See* pages 1043–45 for a discussion of the development of the required records doctrine. We further concluded that the circumstances present in *Hilton* were sufficiently similar to those in *United States v. Williams,* 29 M.J. 112 (C.M.A.1989), the Court of Military Appeals most recent decision addressing the constitutional and statutory issues regarding the accounting procedures in these regulations, to permit the findings of guilty to be affirmed. The situation we face in the instant case proceeds a step further than that in *Hilton.*

In *Williams,* the Court of Military Appeals held that by applying a narrow con-struction to the regulatory disclosure provisions in such regulations, these accounting requirements are "not unconstitutional *per se* and ... [do] not compel disclosures in violation of the Fifth Amendment or Article 31" of the UCMJ. *Id.* at 113. The Court reasoned:

The operative language of this regulation [a merchandise control directive applicable to U.S. forces personnel in Korea] requires a servicemember, upon request, to 'present valid and bona fide information or documentation showing the continued or lawful disposition ... of' specified items. A limited construction of this language suggests that the servicemember must show physical possession of the item or must possess some type of documentation or other papers showing lawful disposition if the item is no longer in his possession.... Different questions or additional questions [absent an Article 31 rights advisement] in combination with the original request to produce the item or documentation are not authorized.

*Id.* at 115. Judge Sullivan, who authored the lead opinion, noted that this limited application of the regulation would avoid one major problem the Court had grappled with in *United States v. Lee,* 25 M.J. 457 (C.M.A.1988), "namely, the scope of the inquiry permitted by the regulation." 29 M.J. at 115. Judge Cox concurred, citing

* *Case History.* The appellant was tried by general court-martial on 18 December 1986 for five violations of a merchandise control regulation, to wit: one specification regarding importation of a tax-exempt motor vehicle into the RP primarily for the purpose of sale or other disposition; and, four specifications alleging failure to show possession or authorized disposition of four different motor vehicles. In accordance with her pleas she was found guilty as charged, and was sentenced by members to a bad conduct discharge, confinement and forfeiture of $339.00 pay per month for one year, and reduction to airman basic (E–1). The convening authority approved the sentence. Before us, the issue of whether the regulation's accounting requirements violated an accused's rights against self-incrimination under the Fifth Amendment and Article 31, UCMJ, 10 U.S.C. § 831, was raised. On 18 June 1987 this Court affirmed the findings of guilty and sentence in a short-form opinion. The regulatory provision's constitutionali-ty was then challenged before the United States Court of Military Appeals. The Court of Military Appeals granted the appellant's petition for review (25 M.J. 300), and subsequently, by Order dated 2 March 1988, set aside the decision of this Court and returned the case to us for further review in light of the Court of Military Appeals' decision in *United States v. Lee,* 25 M.J. 457 (C.M.A.1988), announced that same date. By decision dated 21 April 1988, we held that since the constitutional issue had not been raised at trial it was waived for the purposes of appellate review (26 M.J. 632). On 24 January 1989, in light of the Court of Military Appeals decision in *United States v. Hilton,* 27 M.J. 323 (C.M.A.1989), that Court again returned the case to this Court for further review (28 M.J. 94). In *Hilton,* dealing with the same regulation, it was held that failure to raise the constitutional and statutory questions at issue during the trial did not preclude their consideration by appellate authorities.

his concurring in part and dissenting in part opinion in *Lee. Id.* at 120. In *Lee,* Judge Sullivan, again authoring the lead opinion, concluded that application of this type of regulatory disclosure provision to an *unwarned suspect* violated the Fifth Amendment and Article 31. 25 M.J. at 460–61. In *Williams,* however, he concluded "the evidence of record does not show that appellant was a suspect at the time of questioning or that he was asked questions which violated the Fifth Amendment or Article 31." 29 M.J. at 117. Against this backdrop we turn to the facts in the instant case.

## II

### A

Senior Airman Jones was initially charged with five specifications alleging failures to show possession or authorized disposition of five different motor vehicles. Following the providence inquiry, the first specification was amended to allege that appellant violated a different paragraph of the same regulation by importing a tax-exempt motor vehicle "primarily for the purpose of sale or disposition to any person or entity." The military judge readvised the appellant as to the elements of the offense as amended and subsequently accepted her guilty plea thereto. *Cf. United States v. Wilkins,* 29 M.J. 421 (C.M.A.1990); *United States v. Walker,* 26 M.J. 886, 890–891 (A.F.C.M.R.1988), *pet. denied,* 27 M.J. 463 (C.M.A.1988).

From the record and allied papers we discern the following facts. The Air Force Office of Special Investigations (OSI) discovered a scheme whereby Air Force members would sign paperwork necessary to import a new vehicle into the RP tax free. Upon arrival the vehicles would be turned over to local nationals not entitled to tax-free privileges. Used vehicles were also being blackmarketed. About 35 service-members were identified as being involved, Airman Jones apparently being one of them. An investigation was opened against her based upon documentation showing that in October 1985 she had imported a 1985 Mitsubishi Mini–Bus into the

RP (subject of the specification amended at trial as noted above). On 9 January 1986, OSI agents met with her and asked her to account for that vehicle. She could not. The only statement she made was that she had never received the vehicle. Further investigation revealed documentation that two individuals with tax-free privileges who worked at the American Embassy in Manila had sold vehicles to Airman Jones. Both sellers were interviewed and confirmed the transactions. On 9 May 1986, OSI agents asked her to account for these two vehicles, a 1981 Mitsubishi Galant Sigma and a 1982 Mitsubishi Galant Sapporo (subject of the second and third specifications under the Charge). Again, she could not. When asked to account, the only statement she made was "I don't know what you're talking about." She said nothing else due to the fact that the agents did not advise her of her rights and because she felt harassed by the way they had approached her. Within a couple of months, her involvement with two additional vehicles was confirmed, a 1984 Dodge Caravan Wagon and a 1983 Datsun Sentra Wagon (subject of the fourth and fifth specifications under the Charge). At OSI's request, she was contacted by an official from the Clark Air Base Merchandise Control Office on 2 July 1986 and asked to account for these two vehicles. She could not account for the 1984 Dodge. In response to questions without a rights advisement, she related that the 1983 Datsun Wagon had been shipped back to the United States. When asked for the shipping documents, she said they had been mailed to the person to whom she had shipped the car. The merchandise control official asked her to contact that individual and have the documents returned to her. She was instructed to bring them to him when she got them. She never did so.

### B

■ It is clear to us that these facts indicate Airman Jones was a suspect at the time of each "show and tell" conducted in this case. Nevertheless, we believe the accountability provision of the regulation

charged as violated can be applied constitutionally to her.

The Court of Military Appeals decision in *Williams* appears to be based upon the required records doctrine. The Court stated:

> Production of the item or the documents specified by regulation showing the proper disposition of the same would seem to fit squarely within the required-records exception to the Fifth Amendment privilege. *See Shapiro v. United States*, 335 U.S. 1, 68 S.Ct. 1375, 92 L.Ed. 1787 (1948); *cf. Marchetti v. United States, supra,* 390 U.S. [39] at 57, 88 S.Ct. [697] at 707 [19 L.Ed.2d 889 (1968)]. Chief Judge Everett's concern in *Lee* that this exception was not established because the regulation as applied required more than "mere record keeping," 25 M.J. at 465, would be obviated.

29 M.J. at 116. If one accepts the required records doctrine as providing a constitutional basis for a limited construction of the usual accountability provisions found in these merchandise control regulations, then whether or not an individual is a suspect at the time of the requested accounting is immaterial. *Wilson v. United States,* 221 U.S. 361, 382, 31 S.Ct. 538, 545, 55 L.Ed. 771 (1911). *See also* DA Pam 27–50–197, *The Army Lawyer,* "First *Lee,* Now *Williams:* Has The Shield of the Privilege Against Self–Incrimination Become a Sword?," 30–37 (May 1989). This is the conclusion we reached in *Hilton* at 1047. In the vast majority, if not all, of the Supreme Court and other federal court cases applying the doctrine, the defendants involved were suspected of having committed criminal offenses at the time the subpoena or other request for records was made. *See, e.g., Shapiro v. United States, supra; Davis v. United States,* 328 U.S. 582, 66 S.Ct. 1256, 90 L.Ed. 1453 (1946); *United States v. Darby,* 312 U.S. 100, 61 S.Ct. 451, 85 L.Ed. 609 (1941); and cases cited in *Hilton* at 1044, n. 13.

■ Further, except for the final "show and tell" conducted on 2 July 1986, Airman Jones made no inculpatory statements that could have been used against her or that could serve as a basis for the gathering of derivative incriminating evidence. 29 M.J. at 116–117. The unwarned questioning of Airman Jones by the merchandise control official on 2 July 1986, other than the initial request for the accounting, was in violation of her rights under the Fifth Amendment and Article 31, UCMJ. 29 M.J. at 116. However, she was charged with no offense other than violating the regulation by failing to show possession or authorized disposition of the tax-exempt motor vehicles. *See United States v. Lee,* 25 M.J. at 465 (Judge Cox, concurring in part and dissenting in part). We find no prejudice to the appellant as a result of this error.

The findings of guilty and the sentence are again AFFIRMED.

Chief Judge HODGSON, Senior Judges FORAY and KASTL, and Judges SPILLMAN, LEONARD, MURDOCK and PRATT concur.